**In re Paul Eugene PRESSGROVE, Nancy Ruth Pressgrove, Debtors.**

**CHEVY CHASE, F.S.B., Plaintiff,**

v.

**Paul Eugene PRESSGROVE and Nancy Ruth Pressgrove, Defendants.**

**Bankruptcy No. 91–40641–7. Adv. No. 91–7342.**

United States Bankruptcy Court, D. Kansas.

Oct. 13, 1992.

Daniel Rabin, Berman & Singer, P.A., Overland Park, Kan., for plaintiff.

Frank D. Taff, Topeka, Kan., for debtors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This proceeding is before the Court for decision following trial on the plaintiff's dischargeability complaint against the debtors. The plaintiff appears through counsel Daniel Rabin of Berman & Singer, P.A., of Overland Park, Kansas. The debtors appear personally and through counsel Frank D. Taff of Topeka, Kansas.

The plaintiff contends that the debtors obtained an extension of credit from the plaintiff by false pretenses, a false representation, or actual fraud in violation of 11 U.S.C.A. § 523(a)(2)(A) by using a credit card issued by the plaintiff at a time when they knew or should have known that they would be unable to pay for the charges incurred. Trial to the Court occurred on September 25, 1992. The only evidence offered was a number of exhibits and the testimony of Paul Eugene Pressgrove, one of the debtors. The parties have submitted trial memoranda and the case is ready for decision.

## FINDINGS OF FACT

Shortly before the debtors filed for bankruptcy, Paul Pressgrove became a member of Gamblers Anonymous. His gambling problem has existed for a long time. In 1983, the debtors paid off all their debts, including his gambling debts, by selling real property his parents had given them. In 1989, they again paid off their debts, including his new gambling debts, largely by taking out a $9,100 second mortgage on their home.

Although they filed for bankruptcy on April 1, 1991, the debtors signed their schedules on January 11, 1991, and at that time, they had thirteen active credit cards, ten of which were bank cards. The plaintiff had issued them a credit card toward the end of October of 1990. The bank cards gave the debtors a total line of credit of $28,500. They had charged a total of $11,200 on Sears', Ward's and Penney's credit cards. They also had unsecured loans totalling $6,500 from Associates Financial and ITT Financial Services, both obtained before issuance of the plaintiff's card. The debtors had charged the bank credit cards to their limits by December of 1990. As of January 11, 1991, these unsecured debts totalled $46,900. At least two-thirds of the debt was the result of cash or check draws used for gambling. The debtors have two children, one of whom suffers

from cerebral palsy. Their schedule of income and expenses shows that after they paid for shelter, food, clothing, utilities, transportation, medical care, child care, insurance and other family-type needs, they had about $30 of their take home pay per month left to apply toward this debt.

As indicated, the debtors found they had reached their credit limits on their bank cards by December of 1990. Mr. Pressgrove's parents, who had been giving Mr. Pressgrove and his siblings $6,000 each every year as a Christmas gift advised the debtors that they would no longer feed Mr. Pressgrove's gambling habit, and he could expect no gift that year. The debtors were aware that they could not pay their credit card charges from their ordinary income and believed that their only hope to pay them was if Mr. Pressgrove hit a major gambling lucky streak or his parents gave them money. They discussed their problem and first consulted bankruptcy counsel on January 7, 1991. They signed their bankruptcy schedules on January 11, 1991, and the petition was filed on April 1.

The plaintiff sent one or more pre-approved credit card applications to Mr. Pressgrove during 1990. In late September, he succumbed to the temptation to complete one of the applications and sought a Visa Gold card with a pre-approved credit limit of $6,000. The application asked for the name and address of his employer, the length of his employment, his annual salary, his social security number and, if the preprinted address were incorrect or had not been his address for a certain period, his prior address. Since his wife was a co-applicant, her name, employer, social security number and salary were also to be supplied. The debtors provided the requested information and mailed the application to the plaintiff on or after September 28, 1990. Mr. Pressgrove reported that he had worked for Santa Fe for 23 years and had a current salary of $30,000 per year.[1] Mrs. Pressgrove reported that she worked for the State of Kansas and

had a current salary of $19,000 per year. The form application sought neither information about the debtors' assets, liabilities, or expenses, nor any other personal information about them.

The debtors received the plaintiff's Visa Gold card in late October. At his first opportunity, on October 31, 1990, Mr. Pressgrove used it to get a cash advance at a bank and to cash two checks at a racetrack, obtaining a total $5,831, which he lost gambling. Thereafter, he used the card or checks furnished with it five more times to charge a total of $624.59, $595 of which he incurred at the racetrack. By the end of the first billing cycle on the card, his charges together with the annual fee exceeded the $6,000 limit by $35.00. The debtors made their first and only payment, $300, in November of 1990.

## DISCUSSION AND CONCLUSIONS

█ The creditor has the burden of proving an exception to discharge. *In re Black,* 787 F.2d 503 (10th Cir.1986). To prevail under § 523(a)(2)(A), the plaintiff must establish these elements: (1) the debtors made representations; (2) the debtors knew them to be false when made; (3) the debtors made them with the purpose and intent of deceiving the plaintiff; (4) the plaintiff relied on the representations; and (5) the plaintiff suffered a loss as a proximate result of the representations. *In re Bartlett* 128 B.R. 775, 779 (Bankr.W.D.Mo. 1991). Elements 2 and 4, though not expressly stated in the statute, have been inferred by the courts. *See, e.g.,* 128 B.R. at 779.

█ In this case, the plaintiff presented insufficient evidence to establish any of these elements as to Mrs. Pressgrove, so its claim against her must fail. However, the plaintiff easily proved elements 1, 2, 3 and 5 as to Mr. Pressgrove. He used the Visa card to obtain money in order to gamble. He knew that his ordinary income would not enable him to repay the obli-

---

1. He was laid off for a while during 1990, but was rehired. He received unemployment compensation during this time equal to a large percentage of his normal pay. Santa Fe routinely lays employees off during the year and then rehires them later. Mr. Pressgrove reasonably believed his seniority would keep him employed most of the time.

gation he was incurring and that he must instead rely on striking it rich at the racetrack or receiving significant assistance from his parents to repay it. The use of the card constituted a representation of his intent and ability to repay. *In re Vermillion*, 136 B.R. 225 (Bankr.W.D.Mo.1992). The plaintiff suffered a loss as a result of Mr. Pressgrove's use of the card since it had to pay for the charges even though the debtors have not paid them.

The only question which remained at the conclusion of the trial and on which the Court requested additional briefing was whether the plaintiff reasonably relied on Mr. Pressgrove's implied promise to pay his credit charges. The plaintiff asserts that reasonable reliance is not required under § 523(a)(2)(A) and that only Mr. Pressgrove's improper conduct is relevant. In support of this position, it cites a number of cases, none of which specifically holds a creditor's reasonable reliance on the debtor's promise to pay is irrelevant. In fact, one of the cases, *In re Bartlett*, cited above, clearly holds that the creditor must show reasonable reliance to establish that its claim comes within the statute. Another, *In re Hale*, 139 B.R. 41 (Bankr.M.D.Fla. 1992), discusses the creditor's receipt of a "clean" credit report, implying that it gave the creditor reason to rely on the debtor's ability to repay. A third, *In re Vermillion*, cited above, simply does not address reliance at all. To the extent the case might indicate the plaintiff's position is correct, this Court is not free to follow it, because the Tenth Circuit has ruled that reasonable reliance is an element under § 523(a)(2)(A). *In re Mullet*, 817 F.2d 677, 679–81 (10th Cir.1987).

It is often stated that Congress did not intend the Bankruptcy Code to serve as a haven for dishonest debtors. The Court believes Congress also showed little desire to protect foolhardy creditors. The evidence before the Court shows that the plaintiff chose to offer Paul Pressgrove, an inveterate gambler, and his wife a pre-approved $6,000 line of credit. When they accepted the offer, the debtors' monthly income exceeded their monthly expenses by about thirty dollars. In the six years prior to the application, they had twice sold or mortgaged assets in order to be able to pay debts—many of which arose through Mr. Pressgrove's gambling—that they were unable to pay from their joint earnings.

The plaintiff presented no evidence to explain how it decided to solicit the debtors, and no evidence to indicate it knew anything about the debtors' financial affairs except their income at the time it issued the Visa card, just days before Mr. Pressgrove used nearly all the available credit to feed his gambling addiction. Presumably the plaintiff had some basis for offering the pre-approved credit, but it chose not to favor the Court with that information. All the plaintiff has shown it knew about the debtors was the information supplied on the pre-approved application—their names, address, employers and salaries. There is no evidence that it had a prior credit relationship with the debtors. For this Visa Gold card, it certainly had no payment history to indicate the debtors would fulfill their promise to pay before Mr. Pressgrove made the vast bulk of the charges. The Court believes this is insufficient to establish that the plaintiff's reliance on Mr. Pressgrove's mere promise to pay was reasonable. The plaintiff might just as well pass out cards to every working person it can find and hope those who use them will pay for the charges. Even if the plaintiff had no other way to learn of the debtors' dire financial situation, it did not bother to ask the debtors enough questions to reasonably evaluate their ability to pay. This is not to say a creditor has to reevaluate a debtor's creditworthiness every time a credit card is used, but where the debtor charges the card to its limits as soon as it is received, the creditor had to have a reasonable basis for relying on the debtor's implied promise to pay when the card was issued. The Court must conclude the plaintiff has failed to prove it reasonably relied on Mr. Pressgrove's implied promise to pay for the charges he incurred.

For these reasons, the Court concludes the plaintiff's claim against both debtors is dischargeable.

248

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.