**In the Matter of Juan CORDOVA and Miriam Cordova, Debtors.**

**MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff,**

v.

**Miriam CORDOVA, a/k/a Miriam Cartagena, and Juan Cordova, Defendants.**

**Bankruptcy No. 91–6266–8B7. Adv. No. 91–517.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 20, 1993.

J. Steven Hudson, Deerfield Beach, FL, for plaintiff.

Camille J. Iurillo, Tampa, FL, for debtors/defendants.

### ORDER GRANTING MOTION FOR ATTORNEY'S FEES

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing on Debtors'/Defendants' Motion for Attorney's Fees. The Court, having heard the argument of counsel and having reviewed the Motion and the record, finds the facts as follows:

After returning an unsolicited, pre-approved certificate to Manufacturers Hanover Trust Company (Manufacturers Hanover), Debtor Miriam Cordova received a Manufacturers Hanover credit card in July 1990. Between September 3, 1990, and February 18, 1991, Debtors used the credit card to make purchases and obtain cash advances which they intended to repay.

In September 1990, Debtor Juan Cordova was laid off from his job, unexpectedly and temporarily, until April 1991. Debtors, however, continued to make payments on the credit card balance: $30 in October 1990, $100 in December 1990, and $106 in February 1991. In February 1991, Debtors discontinued using the credit card. At no time did Debtors exceed their credit limit nor did Manufacturers Hanover ever cancel Debtors' credit card or undertake any unusual collection activities. At all times Debtors believed and demonstrated an ability and an intent to repay their credit card debt.

On May 13, 1991, Debtors filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C.). On August 16, 1991, Manufacturers Hanover filed a two-count Complaint to Determine Nondischargeability of Debt, seeking to have the $3,136.15 credit card debt owed by Debtors to Manufacturers Hanover excepted from discharge under Section 523(a)(2)(A). After Manufacturers Hanover presented its evidence at the final evidentiary hearing, this Court (Arthur B. Briskman, Bankruptcy Judge for the Southern District of Alabama, sitting by designation) granted Debtors' Motion for Involuntary Dismissal, reserving, however, Debtors' Motion for Attorney's Fees under Section 523(d) of the Bankruptcy Code. That is the matter currently before the

Court.[1]

Section 523(d) of the Bankruptcy Code provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

Here, Manufacturers Hanover requested determination of dischargeability of a consumer debt under Section 523(a)(2)(A), and this Court determined that debt to be dischargeable. Thus the only questions now before the Court are (1) whether the position of Manufacturers Hanover was substantially justified and (2) if not substantially justified, whether there exist any special circumstances which would make an award of costs and reasonable attorney's fees unjust.

■ The term of art "substantially justified" in Section 523(d) had its genesis in the Equal Access to Justice Act, 28 U.S.C. § 2412(d), (EAJA).[2] Under EAJA, substantially justified means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation ..." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Under Section 523(d), "[t]he test of whether a challenge [to dischargeability] is substantially justified is essentially one of reasonableness.... To avoid

a fee award, the creditor must show that its challenge had a reasonable basis both in law and in fact." S.Rep. No. 65, 98th Cong., 1st Sess. 58–59 (1983).

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud ..." Thus, Section 523(a)(2)(A) provided Manufacturers Hanover with three prongs upon which to attack Debtors' discharge with respect to the credit card debt: Manufacturers Hanover could have established Debtors obtained their extension of credit by false pretenses; Manufacturers Hanover could have established Debtors obtained their extension of credit by a false representation; or Manufacturers Hanover could have established Debtors obtained their extension of credit by actual fraud.

■ The standard for establishing false pretenses or a false representation with respect to use of a credit card was articulated in *First Nat'l Bank v. Roddenberry,* 701 F.2d 927, 932 (11th Cir.1983):

> the voluntary assumption of risk [of nonpayment] on the part of a [credit card issuing] bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation.... Only after such clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by "false pretenses or false representations" within the meaning of section ... [523(a)(2)(A)'s] exemption from discharge. (Emphasis in original.)[3]

---

1. On brief, Debtors argue they are also entitled to attorney's fees under *Transouth Fin. Corp. v. Johnson,* 931 F.2d 1505 (11th Cir.1991), and Section 57.105(2) of the Florida Statutes. This was not raised in Debtors' Motion and shall not be considered by this Court. This Court, however, views *Transouth* as endorsing a policy for awarding attorney's fees in adversary proceedings.

2. The Court of Appeals for the Eleventh Circuit has determined bankruptcy courts have no jurisdiction to award attorney's fees pursuant to

EAJA. *Gower v. Farmers Home Administration (In re Davis),* 899 F.2d 1136 (11th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990). EAJA is used here, however, solely for definitional purposes.

3. Although *First Nat'l Bank v. Roddenberry,* 701 F.2d 927 (11th Cir.1983), was decided under Section 17(a)(2) of the Bankruptcy Act of 1898, the differences between Section 523(a)(2) of the Bankruptcy Code and Section 17(a)(2) of the Bankruptcy Act are negligible (*Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476

Manufacturers Hanover's position was not substantially justified with respect to false pretenses or a false representation: Manufacturers Hanover never canceled Debtors' credit card nor undertook any unusual credit collection activities. Accordingly, under the law in this jurisdiction, Manufacturers Hanover's position with respect to false pretenses or a false representation had no basis whatsoever in law.

The standard for establishing actual fraud was articulated in *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986):

> a creditor must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation.... [Footnote and citations omitted.] The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.

*See also Southeast Bank v. Hunter (In re Hunter)*, 83 B.R. 803, 804 (M.D.Fla.1988); *First Fed. v. Landen (In re Landen)*, 95 B.R. 826, 828 (Bankr.M.D.Fla.1989).

■ Manufacturers Hanover's position was not substantially justified with respect to actual fraud. Manufacturers Hanover never relied to any extent whatsoever, much less relied *reasonably*, on any representations of Debtors in extending credit. Manufacturers Hanover solicited Debtors, pre-approving them for issuance of the credit card. Both at trial and on brief, Manufacturers Hanover stressed that

Debtors' high level of debt and low level of income from January 1990 through May 1991, the time of filing bankruptcy, precluded Debtors from any reasonable expectation or intention of repaying the credit card account. This very argument undermines Manufacturers Hanover's position: had Manufacturers Hanover made any type of inquiry prior to extending credit to Debtors in July 1990, Debtors' financial circumstances would have been apparent. Manufacturers Hanover cannot now complain that Debtors finagled an extension of credit through actual fraud. Manufacturers Hanover freely assumed the risk to extend credit to Debtors. *Accord First Nat'l Bank v. Roddenberry*, 701 F.2d at 932.[4]

Ignoring its own imprudent action in extending credit to Debtors, Manufacturers Hanover contends its position was substantially justified because the facts of record establish Debtors could not reasonably expect to repay their credit card debt. Courts have outlined numerous factors to be considered in assessing a debtor's intention to repay credit card debt:

1. interval of time between making the charges and filing bankruptcy,
2. consultation with an attorney concerning filing bankruptcy before making the charges,
3. number of charges,
4. amount of charges,
5. debtor's financial condition at the time the charges are made,
6. exceeding the credit limit of the account,
7. multiple charges on the same day,
8. debtor's employment status,
9. debtor's financial sophistication,

(11th Cir.1985)), and *Roddenberry* has been applied to Section 523(a)(2) actions. *See, e.g., Manufacturers Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082 (6th Cir.1988); *Manufacturers Hanover Trust Co. v. Abercrombie (In re Abercrombie)*, 148 B.R. 964 (Bankr.M.D.Fla. 1992).

**4.** Certainly, a different result could be possible depending upon on whether a cardholder actively sought credit or the card issuer pre-approved and solicited the potential cardholder. A different result might also be possible if a card issuer

pre-approved and solicited only a select group of potential cardholders. *See, e.g., First Nat'l Bank v. Robinson (In re Robinson)*, 55 B.R. 839 (Bankr.S.D.Ind.1985) (holding that even if a debtor, when filling out a pre-approved application for a credit card, has actual intent not to repay the debts to be incurred on that credit card, the initial credit line would be dischargeable because the institution extending credit did not rely on any misrepresentation of the debtor in granting the extension of credit).

10. sudden changes in debtor's spending habits, and

11. purchase of luxury items.

*See In re Landen,* 95 B.R. at 828–829; *Citibank S.D., N.A. v. Dougherty (In re Dougherty),* 84 B.R. 653, 657 (9th Cir. BAP 1988); *First Nat'l Bank v. Cloud (In re Cloud),* 107 B.R. 156, 160 (N.D.Ill.1989).

In light of the Court's finding that Manufacturers Hanover's position was not substantially justified with respect to actual fraud because Manufacturers Hanover could not possibly establish reasonable reliance on any misrepresentation of Debtors, no analysis of the above-outlined factors is necessary. Assuming, *arguendo,* an analysis of these factors is necessary, this Court still finds Manufacturers Hanover's position in requesting a determination of dischargeability of the credit card debt was not substantially justified. The evidence presented at trial established:

1. Debtors voluntarily discontinued using the Manufacturers Hanover credit card almost three full months prior to filing bankruptcy.

2. Manufacturers Hanover presented no evidence with respect to whether Debtors consulted with an attorney concerning filing bankruptcy before making charges on the credit card.

3. During the five and one-half months Debtors used the credit card, they made a total of 39 purchases and cash advances.

4. The charges range from a purchase of $4.22 to a cash advance of $800. Of the 39 charges, 25 were for less than $50; 8 were for $50–100; 4 were for $100–200; and 2 were for over $200.

5. Debtors financial condition was precarious at the time the charges were made. About the same time Debtor Juan Cordova was laid off from his job, Debtor Miriam Cordova was returning to work after a three-month maternity leave. These two factors resulted in the loss of one half of the family income for a period of time.

6. Debtors never exceeded their credit limit.

7. Debtors made multiple charges on Christmas Eve and on a few other occasions. Debtors did not make multiple small charges on the same day from the same merchant. The bulk of the 39 charges, however, were singular charges.

8. Debtor Juan Cordova was laid off from his job unexpectedly and temporarily, but understood that he would be rehired and was, in fact, later rehired to the same job. Debtor Miriam Cordova was just returning to work after a three-month maternity leave.

9. While Manufacturers Hanover presented no direct evidence of Debtors' financial sophistication, it was obvious from Debtors' testimony that they were not financially sophisticated.

10. Manufacturers Hanover presented no evidence with respect to whether Debtors' spending habits changed suddenly.

11. Manufacturers Hanover presented no evidence with respect to whether Debtors purchased luxury items.

The sole factor supporting Manufacturers Hanover's position in any way is that Debtors used the credit card at a time when their financial condition was precarious. This Court is of the opinion that one very good reason people obtain credit cards is to guard against that "rainy day." Here, one Debtor's three-month maternity leave was followed quickly by the other Debtor's unexpected and temporary layoff. The family income was essentially cut in half for several months. Debtors voluntarily ceased using the credit card, yet continued to make sizeable payments on the credit card. In light of all the countervailing facts, Manufacturers Hanover's position was not substantially justified.[5]

---

**5.** Manufacturers Hanover made no argument whatsoever that special circumstances would make the award of attorney's fees unjust.

Manufacturers Hanover further contends that if Debtors are awarded attorney's fees here, creditors would be prohibited from bringing Section 523(a)(2) actions unless absolutely certain of success, and this is not what Congress intended.

> Section 523(d) was enacted to provide: protection to a consumer debtor that dealt honestly with a creditor who sought to have a debt excepted from discharge on grounds of falsity in the incurring of the debt.... The purpose of the provision is to discourage creditors from initiating false financial statement exception to discharge actions in the hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6321. *See also Transouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1508 (11th Cir.1991). As already noted, Manufacturers Hanover's position had no basis whatsoever in law. Manufacturers Hanover could not establish it had communicated to Debtors an unconditional revocation of their right to use the credit card so as to establish false pretenses or a false representation. Nor could Manufacturers Hanover establish it had reasonably relied on any false representation of material fact by Debtors so as to establish actual fraud. Moreover, Manufacturers Hanover's position had no reasonable basis in fact. This is exactly the type of overreaching by a creditor which Congress sought to curtail by the enactment of Section 523(d).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Debtors' Motion for Attorney's Fees is granted. It is further

ORDERED, ADJUDGED AND DECREED that on or before May 7, 1993, Plaintiff shall file any written objection to the detailed listing of all attorney's fees incurred in the defense of this adversary proceeding filed by Debtors on June 16, 1992. If no objection is timely filed by Plaintiff, the Court shall determine the amount of the fee award without further notice to the parties. If Plaintiff timely files an objection, the matter shall be set for hearing by separate order of this Court.

DONE AND ORDERED.