**In re John Robert LEONARD and Maria Lucinda Leonard a/k/a Lucy Leonard, Debtors.**

**FIRST CARD, Plaintiff,**

v.

**John Robert LEONARD and Maria Lucinda Leonard a/k/a Lucy Leonard, Defendants.**

**Bankruptcy No. 92–20809–RJB.
Adv. No. 92–2338–SBB.**

United States Bankruptcy Court, D. Colorado.

Aug. 25, 1993.

Barry Meinster, Barry Meinster & Assoc., P.C., Denver, CO, for plaintiff.

John Robert Leonard, pro se.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on May 5, 1993 for a trial regarding Plaintiff's Complaint filed pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiff, Visa First Card, an issuer of Visa charge and cash advance cards, ("Visa") seeks to except from discharge its claim on a card issued to the Debtors on the grounds that the Debtors falsely represented that they had the intention of paying for the credit when they used the card.

The question before the Court is, essentially, did the Debtors obtain the extension of credit based on false representations, express or implied? This Court finds that they did not. Moreover, the Court finds that the creditor, Visa, did not exercise due diligence when it approved the line of credit to the Debtors, and it was so inept and lacking in responsible business practices when it extended this unsolicited credit that there was no reliance whatsoever on the alleged false representations. Reasonable expenses, including attorneys fees and costs, are awarded to the Debtors.

## I. *FINDINGS OF FACT*

1. Debtors filed a Voluntary Petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on August 27, 1992. The Debtors' Schedules reflect $34,085.00 in unsecured claims, much of which is credit card debt.

1. Income tax returns for 1990 and 1991 reflect roughly 25% less income than reported on the Schedules.

2. The Invitation was directed to Lucy Leonard but, in space provided, John Leonard accepted the Invitation as well.

3. The "agreement," in print size only an optometrist could appreciate, includes many standard

2. Debtor, John Robert Leonard, reported that his income in 1990 was $65,000.00 for "crop spraying"; in 1991 it was $44,000.00 for serving as a "helicopter pilot on tuna boat"; and in 1992 it was $600.00 for "flying." [1]

3. In January 1992, Debtors received an unsolicited Visa Gold Card Invitation for $7,500.00 on a "Pre-approved Credit Line." They accepted the Invitation, filled out the Invitation Certificate form, and they were sent their credit card and "live" checks, i.e., their $7,500.00 "pre-approved" line of credit.[2]

4. The Visa Gold Card Invitation required only that (a) Lucy Leonard identify her employer, and (b) both Debtors disclose their dates of birth, social security and telephone number(s). Lucy Leonard identified her employment as "self-housewife."

5. No other information regarding the Debtors, or their personal or financial situation, was evidently requested by Visa. No credit application, or similar form, was requested by Visa.

6. After signing the Invitation Certificate, Debtors then received a "Cardmember Agreement and Disclosure Statement." The "Agreement" was never signed. The Invitation Certificate contained no language constituting, or purporting to constitute, an agreement for an extension of credit.[3]

7. Debtors indicated they were essentially debt free with $6,000.00 in the bank in August 1991.

8. Debtors used the Visa First Card cash advances as follows:

a. Internal Revenue Service, $3,780.06, April 3, 1992;

b. Bank account, $1,000.00, May 24, 1992;

credit card provisions, as well as the proviso that:

2. Promise to Pay—When you use your account or permit someone else to use it for purchases or advances, you represent to us that you have the intention and ability to pay and you promise to pay for all such purchases and advances as well as any Finance Charge and Other Fees, if any, that may be due.

c. Bank account, $500.00, June 28, 1992; and

d. Bank account, $1,000.00, July 7, 1992.

Visa First Card cash advances at the time of bankruptcy, August 27, 1992, totalled $6,280.00.

9. Medical problems beset the Debtors in 1991–1992. For examples, (a) John Leonard aggravated his hernia in June 1991, (b) Lucy Leonard underwent eye surgery for a detached retina in July 1991, (c) John Leonard had a hernia operation in September 1991, (d) John Leonard injured his back in April 1992, and (e) Lucy Leonard occasioned problems with cancer.[4]

10. Employment and income problems, largely due to the medical difficulties, beset the Debtors as well. After 25 years working on the tuna boat as a pilot and mechanic, John Leonard was forced to leave his employment, July 31, 1991, because of the hernia. He testified he expected to be rehired after surgery for the hernia. Between August 1991 and August 1992, however, John Leonard had almost no employment or income, except for about $600.00 in May 1992 earned from contract flying.

11. Mr. Leonard testified as to his expectations for work, returning to employment on the tuna boat, other job offer(s) that "fell through," and his efforts to locate employment after leaving the tuna boat, August 1991 through August 1992.

12. Mrs. Leonard filed for divorce on July 27, 1992, shortly before the bankruptcy was filed.

13. Debtor, John Leonard, asserts that much, if not most, of the Debtors' total credit card debt was incurred to pay for Debtors' medical care and health related services; the balance was for living expenses.

## II. *DISCUSSION*

Plaintiff seeks to except from discharge its $6,280.00 claim pursuant to Section 523(a)(2)(A) which provides:

**§ 523. Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A).

■ To have a debt determined to be non-dischargeable pursuant to Section 523(a)(2)(A) the party opposing discharge, here Visa, must prove, by a preponderance of the evidence:

(1) [T]he debtor made a materially false representation;

(2) the debtor had intent to deceive;

(3) the creditor relied on the false representation;

(4) the creditor's reliance was reasonable; and

(5) the creditor sustained a loss as a result of the debtor's representation.

*Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 [112 L.Ed.2d 755] (1991). *See also, In re Mullet*, 817 F.2d 677, 680 (10th Cir.1987); *In re Kurtz*, 110 B.R. 528 (Bankr.D.Colo.1990). *Comerica Bank–Midwest v. Kouloumbris*, 69 B.R. 229, 230 (N.D.Ill.1986).

Plaintiff maintains that Debtors "did not have the intention to pay the [cash advance] obligations" when they obtained same and that conduct constitutes a "false representation" sufficient to bar the debt from discharge. Visa urges the Court to find the requisite intent element, or "fraudulent intent" by circumstantial evidence. The creditor, Visa, finds support for this position in case law, perhaps best articulated in *In re Kramer*, 38 B.R. 80 (Bankr. W.D.La.1984). There the court reasoned and held as follows:

---

**4.** This was never explained in detail. Lucy Leonard did not attend the trial.

False pretenses or fraudulent or reckless misrepresentations may be implied by the debtor's conduct or silence and numerous courts have consistently held that no overt misrepresentation is necessary to find a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). As stated, in [*Matter of*] *Schnore,* [13 B.R. 249, 254 (Bankr.W.D.Wis.1981)]:

> 'The debtor's presentment of his or her credit card and signature on the credit receipt in exchange for goods is deemed an implied representation that the debtor has the intent and ability to pay for the goods. This implied representation makes overt statements of intent and solvency unnecessary.'

See also *In Re Black,* 373 F.Supp. 105, 107 (E.D.Wisc., 1974); [*Matter of Banasiak,* 8 B.R. 171] ([Bankr.] M.D.Fla., 1981); [*Matter of Schneider*], 3 B.C.D. 175 (D.Nev., 1977).

*Kramer, supra* at 82.[5]

*In re Kramer* also recited the criteria by which a debtor's fraudulent intent in the actual use of a credit card can be found, based on circumstantial evidence. These criteria include the following:

> (1) [T]he length of time between making the charges and filing bankruptcy; (2) the number of charges made; (3) the amount of the charges; (4) whether the charges were above the credit limit on the account; (5) a sharp change in the buying habits of the debtor; (6) whether charges were made in multiples of three or four per day; (7) whether charges were less than the $50.00 floor limit; (8) the financial condition of the debtor was hopelessly insolvent when the charges

were made; (9) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (10) the debtor's employment circumstances; and (11) the debtor's prospects for employment. See *In Re Pannell,* [27 B.R. 298 (Bankr. E.D.N.Y.1983)]; [*Matter of*] *Stewart,* 7 B.R. 551 (B.C.M.D., Ga., 1980); [*Matter of*] *Boydston,* 520 F.2d 1098 (5th Cir., 1975); [*Matter of*] *Hadley,* 25 B.R. 713 ([Bankr.] M.D.Fla.1982); *In Re Smith,* 25 B.R. 396 ([Bankr.] D.Md., [1982]); *In Re Black,* [373 F.Supp. 105 (E.D.Wis. 1974)]; [*Matter of*] *D'Amico,* 1 B.R. 170 ([Bankr.] W.D.NY, 1979); [*Matter of*] *Schnore,* [13 B.R. 249 (Bankr.W.D.Wis. 1981)]; *In Re* [*Poteet,* 12 B.R.] 565 (B.C.N.D.TX, 1981); *In Re* [*Petrini,* 23 B.R. 981] (B.C.E.D.Pa., 1982); [*Matter of*] *Scheider,* [[sic] 3 B.C.D. 175 (D.Nev. 1977)].

*Kramer, supra* at 83.

There are no reported decisions on this topic by judges in this District, but there is a host of recent decisions applying this theory with different degrees of success in other districts. Some decisions apply the theory and determine a credit card debt to be non-dischargeable. *In re Rouse,* 156 B.R. 314 (Bankr.M.D.Fla.1993) and *In re Vermillion,* 136 B.R. 225 (Bankr.W.D.Mo. 1992). Others apply the theory and determine the credit card debt to be dischargeable. *See, In re Friend,* 156 B.R. 257 (Bankr.W.D.Mo.1993); *Matter of Cordova,* 153 B.R. 352 (Bankr.M.D.Fla.1993); *In re Pressgrove,* 147 B.R. 244 (Bankr.D.Kan. 1992); *In re Cronk,* 144 B.R. 903 (Bankr.

**5.** Equally articulate support for this theory is found in Chief Judge Charles E. Matheson's unpublished opinion wherein he states:

> The bankruptcy law is structured so that persons who encounter financial distress can be relieved of that and can find their way back in the community absolved of their debts and be a contributing member of the community, which is healthy for all of us. But the essence of 523 is that a dishonest debtor is not to be granted a discharge of that debt which was incurred dishonestly.
>
> The credit card scenario law then has evolved to create a requirement on the part of a bor-

> rower, a user of the credit card, that when the card is used, that there is an intention to pay for that use, and more than that, that there is a reasonable expectation and an ability for that payment to be made. It's not enough just to have an honest heartfelt need, desire, belief that the debtor is going to repay his cash advance; that's not enough. If that belief isn't supported to some reasonable degree by some attachment to reality, then the honest intention to repay is not sufficient.
>
> *In re Dryer* (*Bellco First Federal Credit Union v. Dryer* ), Adversary Proceeding No. 92–1076–CEM, June 26, 1992 hearing transcript.

M.D.Fla.1992); *In re Sharp,* 144 B.R. 372 (Bankr.S.D.Ohio 1992).[6]

Two theories could support Visa's claim under Section 523(a)(2)(A). First, Visa First Card could prevail if it is shown that issuance of the card and the pre-approved $7,500.00 credit line was extended pursuant to some fraud or false representation by the Debtors. Second, Visa could prevail if it proved that Debtors' actual use of the card constituted an implicit representation of an intent to repay the debt and, at the pertinent time, Debtors had no such intent or reasonable ability to do so. In this Court's view, based on the evidence at hand, the Plaintiff failed on both theories.

1. *Debtors alleged fraud or false representations when initially acquiring credit card and extension of credit.*

■ The issuance of the unsolicited card and the unsolicited pre-approved $7,500.00 line of credit (represented by "live" checks) by Visa to the Debtors was made without any financial representations by Debtors to the lender, let alone false representations. Debtors were asked for and gave their names, and social security and telephone number(s), on the mail-in Invitation Certificate submitted to them by Visa. Debtors were never asked a question about, or anything related to, their income, expenses, employment, assets, health, home ownership, credit references, or financial condition.[7] There is no evidence that an inquiry was made by Visa to establish the credit worthiness or the financial condition and personal situation of the Debtors, either before or after the credit was initially extended to them.

The Court can only conclude that there were: (a) no representations made by the Debtors, and (b) no reliance, whatsoever, let alone reasonable reliance, by Visa on representations of the Debtors sufficient to except from discharge this debt pursuant to Section 523. There is no evidence that Visa took any steps to insure its "pre-approved" extension of credit here was done in a diligent, responsible or business-like fashion.[8]

Visa First Card failed to prove four of the five elements necessary to prevail on this first theory of recovery and it is thus denied its claimed exception to discharge for issuing the credit, initially, due to fraud or false representations.[9]

2. *Debtors alleged fraud or "false representation" implied when obtaining cash advances.*

With respect to Visa's second possible theory of recovery, the Court must decide if Visa may prevail because the Debtors falsely represented an intent or ability to pay the cash advances when the advances were made.

■ There is strong precedent for the rule that credit card companies which do not conduct credit checks, or which otherwise do not diligently gather useful information and evaluate credit worthiness of a particular applicant, are completely barred from excepting any of their claim(s) from a discharge in bankruptcy. In *In re Ward,* 857 F.2d 1082 (6th Cir.1988), the Sixth Circuit Court of Appeals denied a credit card issuer's claims under Section 523(a)(2)(A) because the creditor failed to conduct any inquiry into the credit worthiness of its debtor. The court adopted reasoning and conclusions as follows:

[The creditor argues] that, assuming arguendo an unreasonable initial issuance of credit, such action was nevertheless irrelevant because the bank reasonably relied upon Ward's implied assurances that he would discharge each indebted-

---

6. The Tenth Circuit has, evidently, only one unpublished opinion on the subject not available for precedential value. Also, *In re Kurtz,* 110 B.R. 528 (Bankr.D.Colo.1990) is an opinion in this District from Judge Arthur N. Votolato, Jr.

7. As noted, *infra,* Mrs. Leonard was identified as a "housewife."

8. There was no evidence, for example, that a credit report was requested or obtained by Visa.

9. *See,* elements (1), (2), (3) and (4), *In re Mullet,* 817 F.2d 677, 680 (10th Cir.1987).

ness incurred against MHT's line of credit which resulted from the use of the MHT Mastercard. Indeed, decisions ... support the proposition that a credit card holder impliedly represents to the bank that he is willing and able to pay the incurred indebtedness each time he uses the card.

However, even if each credit card charge constituted a 'representation' of ability to pay, the case law and legislative history make it clear that a credit check must be conducted at some point; otherwise an exception to discharge is unavailable. A contrary rule would 'place credit card companies in a special category of creditors and makes their [credit card] debts too easily nondischargeable.' [*Matter of*] *Carpenter*, 53 B.R. 724, 728 (Bankr. N.D.Ga.1985). This court rejects extending preferential protection, at the expense of other unsecured creditors, to credit card companies which profit from extending consumer credit at the risk of non-payment, which risk is factored into finance charges which are higher than the rates charged by other lenders.... Section 523 should not be construed to afford credit card issuers more protection than is given to all other creditors. *Ward, supra* at 1085.

This Court here adopts the reasoning and conclusions set forth in *Ward*. Visa is not entitled to except its claim from Debtors' discharge—or any of its several cash advances to these Debtors—on the theory that each separate charge, or cash advance, was an implied promise and false representation of intent and ability to pay. The lack of due diligence and responsible extension of credit is a bar to the creditor's recovery.

■ This Court concludes, further, that the Debtors did not, in any event, make fraudulent or false representations, explicit or implicit, with regard to intent to pay the debt, when the cash advances were made.

The evidence is persuasive that the Debtors' intent and their prospective ability to repay the Visa cash advances in 1992 were real, reasonable, and in good faith.

Mr. Leonard demonstrated prior substantial earning capacity with work skills and experience transferable to new jobs and other geographical areas; initially he had good prospects of reclaiming his old employment and credible promises of new employment; he made a sustained and substantial effort to acquire new employment in 1992; the number of cash advances were few and the amounts were well below the credit limit; there are no signs of extravagance ... and the advances were received well before bankruptcy was filed; unexpected and/or chronic medical problems, particularly in 1992, caused a rapid decline in Debtors' financial and employment situation; Debtors did not consult bankruptcy counsel until after the charges were incurred. These features of Debtors' circumstances, during the time in question, when measured against the criteria by which the Court can find "badges of fraud" in credit card use, persuade the Court that no fraud, no false representations, were made by Debtors. *Kramer, supra* at 82. *See, Friend, supra.*

The use of the credit extension and taking the cash advances were not accompanied by Debtors' fraud or false representations and thus Visa has failed to prove a central, necessary element of its case under Section 523. Visa, thus, cannot prevail under its second theory of recovery.

The Court concludes the Visa claim against these Debtors is dischargeable.

3. *Attorney Fees.*

Section 523(d) provides for an award of costs and attorney fees where, as here, a creditor unsuccessfully seeks a determination of dischargeability pursuant to Section 523(a)(2).[10]

---

**10.** Section 523(d) states as follows:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of,

and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.
11 U.S.C. § 523(d).

In order for the debtor to prevail on a motion for attorney's fees under section 523(d), five elements must be satisfied: (1) the creditor must bring a dischargeability complaint under section 523(a)(2); (2) the complaint must concern a consumer debt; (3) the debt must be found to be dischargeable; (4) the court must find that the creditor's complaint was not substantially justified; and (5) there must be no special circumstances which would make the award of attorney's fees unjust. *Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 927 (Bankr.W.D.Mo.1991). *See also Manufacturers Hanover Trust Co. v. Cordova ([Matter of] Cordova)*, 153 B.R. 352 (Bankr.M.D.Fla.1993).

*Friend, supra* at 262.

The first three elements have been satisfied.

■ With regard to the fourth element, it is Visa's burden to prove its claim was "substantially justified" and to do that, it must "prove the complaint had a reasonable basis in law and fact." *Friend, supra* at 262. *FCC Nat'l Bank v. Dobbins*, 151 B.R. 509, 512 (W.D.Mo.1992). This Court concludes that the complaint, and more significantly the trial, were not well-founded and did not have a reasonable basis, for three reasons. First, the case law controlling credit card fraud, which is contraindicative to Visa's position, here, such as *Ward, supra*, has been around for several years, thus putting credit card issuers like Visa clearly on notice of (a) their obligations as responsible credit issuers, and (b) their burden in dischargeability proceedings such as this. Visa failed to heed either.

Second, no discovery was undertaken by Visa prior to filing of the Complaint and prior to going to trial. The facts divulged at trial could have easily been developed before trial, thus, at least, alerting Visa to the weakness of its case and likely foregoing the trial.[11]

Third, and perhaps most important, Visa was extraordinarily cavalier and irresponsible—indeed negligent—in extending pre-approved credit for $7,500.00 in this circumstance. There was no due diligence shown; there was not any discernible effort to obtain useful information from the Debtors to measure their credit worthiness or their personal and financial circumstances. This Court will not protect foolish creditors any more than it will shield dishonest debtors. *See, In re Pressgrove, supra* at 247.

This case is not unlike *Cordova, supra*, where the court awarded attorney's fees because the creditor's case lacked substantial justification. There, as here, the creditor argued forcefully that their case was substantially justified principally because the debtor's financial situation was so precarious, so imbalanced, at the time the credit was extended that use of the card was fraudulent or invested with implicit false representations. The court reasoned that:

Both at trial and on brief, Manufacturers Hanover stressed that Debtors' high level of debt and low level of income from January 1990 through May 1991, the time of filing bankruptcy, precluded Debtors from any reasonable expectation or intention of repaying the credit card account. This very argument undermines Manufacturers Hanover's position: had Manufacturers Hanover made any type of inquiry prior to extending credit to Debtors in July 1990, Debtors' financial circumstances would have been apparent. Manufacturers Hanover cannot now complain that Debtors finagled an extension of credit through actual fraud. Manufacturers Hanover freely assumed the risk to extend credit to Debtors. *Accord, First Nat'l Bank [of Mobile] v. Roddenberry*, 701 F.2d [927,] 932 [ (11th Cir.1983) ] [footnote omitted].

---

**11.** Debtor, John Leonard, had to travel from out-of-state to attend trial in Denver, Colorado. The Court is cognizant of the fact that the Debt-or appeared at trial *pro se*, but makes available an award of costs—and attorney's fees for pretrial consultation, if any—by this Order.

*Cordova, supra* at 355.

The reasoning and conclusion in *Cordova* is equally applicable here.

The quality and quantity of evidence produced by Visa was simply inadequate and wholly insufficient to carry its burden proving Debtors' use of a credit card under conditions of fraud or false representations. There was simply no evidence of false representations and no circumstantial evidence allowing the inference of fraud or false representations by the Debtors. By contrast, the Debtors' evidence demonstrated measured use of the credit extended, bona fide intent to repay the cash advances, and a good faith expectation of an ability to repay the obligation.

Accordingly, it is

ORDERED as follows:

1. Costs, including attorney's fees if any, are awarded to the Defendant, John Robert Leonard.

2. Judgment shall enter in favor of the Defendants, John Robert Leonard and Maria Lucinda Leonard, and against the Plaintiff, First Card, on Plaintiff's claims in the within matter.

3. Defendant John Robert Leonard shall, on or before **September 14, 1993,** file with this Court and serve upon Plaintiff's counsel, a bill of costs and legally sufficient statement of legal fees and costs, if any. Plaintiff shall, on or before **October 4, 1993,** file with this Court and serve upon Defendant John Robert Leonard, a written statement as to any objections Plaintiff may have to an award of the fees and costs requested, in whole or in part. The Court shall rule on the matter from the pleadings filed with the Court.