**In re Frederick Eugene HOYLE, Debtor:**

**MERCANTILE BANK, Plaintiff,**

v.

**Frederick Eugene HOYLE, Defendant.**

Bankruptcy No. 93–12522–7.
Adv. No. 94–5089.

United States Bankruptcy Court,
D. Kansas.

April 11, 1995.

Donald B. Clark, Wichita, KS, for debtor/defendant Frederick Eugene Hoyle.

Drew Frackowiak, Overland Park, KS, for plaintiff Mercantile Bank.

Lynn D. Allison, Trustee, Wichita, KS.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter came on for trial on December 6, 1994, upon Mercantile Bank's Complaint to Determine Dischargeability of Debt. Plaintiff, Mercantile Bank appeared by and through counsel, Drew Frackowiak. Defendant/debtor Frederick Hoyle ("Hoyle") appeared by and through counsel, Donald B. Clark.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### FINDINGS OF FACT

Based upon the stipulations, testimony and exhibits, the Court finds as follows:

(1) Prior to July, 1993, Hoyle owed approximately $31,000 on seven revolving charge credit cards and $6,200 on secured loans from Sears and Montgomery Wards.

(2) Hoyle had a monthly income of approximately $1,234 from social security and the rental of a room in his residence.

(3) He had monthly expenses of approximately $1,236, including the monthly payments to Montgomery Wards and Sears, but excluding the monthly payments on the other credit cards.

(4) Hoyle had managed to stay current on his monthly obligations on the other seven credit cards by using cash advance funds from all or several of these credit cards.

(5) In late June, 1993, Hoyle signed and returned to Mercantile Bank an "Acceptance Certificate" of a pre-approved Visa Gold Card with a minimum credit line of $7,500.

(6) After reviewing Hoyle's credit history, Mercantile Bank approved his application, giving him a $1,800 credit limit.

(7) On July 7, 1993, Hoyle applied for a $46,000 loan from Capitol Federal Savings, to refinance the existing $29,000 mortgage on his home and to pay off some of his credit card bills.

(8) On his loan application to Capitol Federal, Hoyle disclosed the $29,000 mortgage and about $17,500 in credit card debt and secured debt to Sears and Wards. He failed to disclose over $20,000 in credit card balances owing Chase, Citibank, First Card, KBC Card Services and Chemical Bank.

(9) Hoyle testified that he only listed debts that he planned to pay off with the loan and was planning to pay the undisclosed $20,000 debt with the budget surplus he would have after paying off Sears and Montgomery Wards.

(10) On July 20, 1993, Capitol Federal denied Hoyle's loan application. By then, Hoyle had already received $1600 in cash advances on his new Mercantile Bank credit card account. After that, Hoyle made one more cash advance of $150.

(11) Hoyle never made a payment on the Mercantile account.

(12) On October 1, 1993, Hoyle filed a Chapter 7 bankruptcy petition.

### CONCLUSIONS OF LAW

 Mercantile Bank asserts that Hoyle's credit card obligation should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code. This section excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Exceptions to discharge are to be narrowly construed, and the burden of

proving that a debt falls within the statutory exception is on the party opposing discharge. *In re Black,* 787 F.2d 503, 505 (10th Cir.1986) (citations omitted). Mercantile Bank must prove by a preponderance of the evidence that:

(1) the debtor knowingly committed actual fraud, false representations or false pretenses;

(2) the debtor had the intent to deceive the creditor;

(3) the creditor relied on the debtor's conduct;

(4) the creditor's reliance was reasonable; and

(5) the creditor was damaged as a proximate result.

*See In re Mullet,* 817 F.2d 677, 680 (10th Cir.1987); *In re Ridgway,* 24 B.R. 780, 784 (Bankr.D.Kan.1982); *see also Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (holding that the standard of proof for § 523(a) exceptions to discharge is the ordinary preponderance-of-the-evidence standard).

■ Hoyle did not make a false representation on the "Acceptance Certificate." At the time he submitted this application, he did not act under false pretenses or engage in the type of deceit, artifice or trickery that constitutes actual fraud. However, at the time he took cash advances, Hoyle impliedly represented that he had the intent and ability to repay. *See In re Pressgrove,* 147 B.R. 244, 247 (Bankr.D.Kan.1992) (holding that the debtor's use of his credit card constituted an implied representation that the debtor has the intent and ability to repay). Thus, the implied representation makes a finding of overt statements of intent and solvency unnecessary. *See In re Leonard,* 158 B.R. 839, 843 (Bankr.D.Col.1993) (citation omitted). Therefore, a purchase of goods on credit by a debtor who does not intend to repay or does not have the means to repay constitutes a false representation. 3 Collier on Bankruptcy 523–55 (15th Ed.1994).

At the time Hoyle took the first $1600 in cash advances, he had a loan application pending. Had he received the loan, he would have consolidated his $29,000 mortgage loan, $7000 in secured loans and about $10,500 in credit card debt. That would have left him with another $22,000 in credit card debt to service, in addition to the $46,000 loan. It is evident that Hoyle did not have the ability to service the debt he had before he applied for the loan. It is also evident that even if Capitol Federal approved the $46,000 loan, Hoyle could not have serviced that loan, his monthly expenses and the remaining $22,000 in credit card debt. He testified that by consolidating his loans from Sears and Montgomery Wards, he would have extra funds each month to service his remaining credit card debt. But, the exhibits show that his monthly payments to Sears and Montgomery Wards totalled $245, hardly enough to service monthly payments on $22,000, plus the higher monthly payment on a $46,000 loan as opposed to a $29,000 loan.

Thus, when Hoyle took the $1600 in cash advances, he implied that he had the ability to repay. He did not have the ability to repay, whether or not he received the loan from Capitol Federal. And, when he took the final advance of $150, the loan application had been denied and he knew he had no means to repay the debt.

■ In determining whether Hoyle intended to deceive Mercantile Bank, the Court must consider the totality of the circumstances, including the following objective factors:

1. the length of time between making the charges and filing bankruptcy;

2. the number and amount of charges made and whether multiple charges were on one day;

3. whether the charges were above the credit limit;

4. the change in the buying habits of the debtor;

5. whether an attorney was consulted about bankruptcy before charges were made;

6. whether the purchases were made for luxuries or necessities;

7. the financial condition of the debtor at the time the charges were made; and

8. the debtor's prospect for salary from employment or other means.

*See In re Kurtz,* 110 B.R. 528, 530 (Bankr. D.Colo.1990) (citations omitted); *In re Leonard,* 158 B.R. 839, 843 (Bankr.D.Colo.1993).

The strongest objective factor tending to show Hoyle's intent to deceive is his financial condition at the time the charges were made. He was paying off his other credit card debts by using cash advances from other credit cards at the time he sent in his application for his Mercantile Card. He had an annual income of only $15,000, mostly from Social Security. The only other prospective future salary was the money he was receiving from renting a room in his residence. Although he had over $40,000 worth of debt, he applied for the Mercantile credit card anyway. Not only did he receive the credit card with an $1,800 limit, he immediately maximized his charges within 30 days. Furthermore, his omissions on the loan application to Capitol Federal evidence Hoyle's state of mind. He knew he was in a precarious financial condition and evidently thought the application would not be approved if he disclosed all of his debt. Taking into account the totality of the circumstances, Mr. Hoyle had the intent to deceive Mercantile Bank.

■ The third and fourth factors are whether or not the creditor relied on the debtor's representations and whether it did so in a reasonable manner. Mercantile Bank investigated Hoyle's credit history and approved the application, but reduced the "pre-approved" $7500 credit limit to $1800. In advancing credit, Mercantile Bank relied on the "Acceptance Certificate," its investigation of Hoyle's credit history, as well as Hoyle's implied representations at the time of the cash advances. Hoyle's high debt load and relatively low income made him a questionable candidate for additional credit. However, Hoyle testified that he always kept his monthly obligations current, a factor that would have made his credit history appear favorable. Furthermore, Mercantile Bank did investigate Hoyle's credit history and gave him a relatively low credit limit. By the preponderance of the evidence, Mercantile Bank has shown that its reliance was reasonable.

Mercantile Bank has also proved it sustained a loss. Hoyle received a total of $1750

in cash advances, rendering a balance due of $1786.87 with interest.

**IT IS THEREFORE ORDERED BY THE COURT** that judgment shall be entered for Mercantile Bank on the Complaint to Determine Dischargeability of Debt, and the debt in the amount of $1,786.87 shall be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.